IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.  09-00281-CG-N |
| | ) | |
| TONY LEE MITCHELL | ) | |

**UNITED STATES'S RESPONSE IN OPPOSITION TO
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Comes now the United States of America, by and through Kenyen R. Brown, the United States Attorney for the Southern District of Alabama, and responds to defendant Tony Lee Mitchell's *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, and accompanying memorandum.  Doc. 28.  His three claims are meritless, and the motion is due to be denied.

Background

Through a standard written plea agreement, lengthy factual resume, and guilty plea colloquy, Mitchell pleaded guilty to multiple counts: count one, attempt to manufacture methamphetamine, in violation of 21 U.S.C. § 846; count two, using and carrying a firearm in connection with a drug felony, in violation of 18 U.S.C. § 924(c)(1); count three, felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and count four, possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d).  Docs. 15, 16, 30.  Prior to the plea proceeding, the United States filed an enhancement information under 21 U.S.C. § 851, thus triggering the enhanced penalties set forth in 21 U.S.C. § 841(b)(1)(A), (B), and (C).

At the outset of the sentencing hearing, this Court adopted the PSR's findings and calculations after noting that the parties posed no objections. Doc. 30 at 2. The PSR correctly grouped the counts of conviction, other than the one under § 924(c)(1) because that particular count requires a statutory consecutive five-year term. The grouped counts (one, three, and four) warranted a base offense level of 24 because Mitchell was responsible for between 40 and 50 grams of methamphetamine. Doc. 20 at 7-8, Doc. 21. The only specific offense characteristic imposed was a three-level bump under U.S.S.G. § 2D1.1(b)(10)(C)(ii) ("the offense involved the manufacture of amphetamine or methamphetamine and the offense created a substantial risk of harm to (I) human life other than a life described in subdivision (D); or (II) the environment. . . ") (subsection (D) addresses risks to "the life of a minor or an incompetent"). With a three-level reduction for acceptance of responsibility, Mitchell's total offense level was 24. Doc. 20 at 9. And with a criminal history category of III, his advisory sentencing guideline range – as to the three grouped counts – was 63 to 78 months in prison. *Id.* at 13, 18.

As to counts one, three, and four, Mitchell was sentenced to 63 months in prison – the low-end of the sentencing guideline range. Consecutive to that was the 60-month sentence mandated by § 924(c)(1) (as per count two), resulting in a total sentence of 123 months. Doc. 25 at 2; Doc. 31 at 4-5.

No objections were posed to the sentence, *id.* at 6; a notice of no appeal was filed, Doc. 24; thus, there was no direct appeal; this timely § 2255 motion followed; and Mitchell remains incarcerated.

Mitchell's first claim – attacking the guilty plea

Mitchell's first claim purports to attack his guilty plea. Ground one alleges ineffective assistance of counsel "when she advised and allowed Petitioner to plea guilty to Count 2, a 924(c)(1) violation while knowing the guns were not used or carried in the furtherance of a drug trafficking crime." Doc. 28 at 5; *see also id.* at 9 (in accompanying memorandum: "Counsel was ineffective by allowing Petitioner to plead guilty to a count he was factually innocent of and this affected his sentence and punishment.").

This claim is due to be summarily denied because it fails as a matter of law. This Court is well-familiar with the *Strickland* standards governing claims of ineffective assistance of counsel.

> To succeed on a claim of ineffective assistance, a habeas petitioner must satisfy both prongs of the test set out by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 . . . (1984). The performance prong requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id.* at 687-89. . . . The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense. *Id.* at 687. . . .
>
> Unless a petitioner satisfies the showings required on both prongs, relief is due to be denied. *Id.* As a result, once a court decides that one of the requisite showings has not been made it need not decide whether the other one has been. *Id.* at 697 . . . (a court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one."); *Duren v. Hopper,* 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong"). . . .
>
> To establish prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. . . . A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. [T]hat the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." *Gilreath v. Head,* 234 F.3d 547, 551 (11th Cir. 2000) (alteration in

original) (quoting *Strickland*, 466 U.S. at 693. . .).

*United States v. Butcher,* 368 F.3d 1290, 1293-94 (11th Cir. 2004).

The Supreme Court has held that the two-part *Strickland* test applies to "challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The Supreme Court has provided specific direction as to how *Strickland* prejudice must be alleged and proved with respect to guilty plea claims. In *Hill*, the Court held that, to establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. The undersigned has scoured Mitchell's motion and accompanying memorandum, but nowhere does he even attempt to allege under *Hill*, much less prove, that but for counsel's supposed errors he would not have pleaded guilty and instead would necessarily have opted to go to trial. In fact, in what would appear to be his prayer for relief, he merely asks this Court "to have his sentence vacated and to be resentenced. . . ." Doc. 28 at 11. This is automatically fatal to his guilty plea claim because he necessarily cannot establish *Strickland* prejudice vis-a-vis *Hill*. As to the prejudice determination, the Supreme Court made clear in *Strickland* that a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.,* 466 U.S. at 697; *see also Holliday v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

Therefore, Powell's guilty plea claim is due to be denied as a matter of law.[1]

---

[1] Moreover, as this Court is aware, under *United States v. Broce*, 488 U.S. 563, 569 (1989), a knowing, voluntary, and counseled plea of guilty not only waives any collateral attack of the plea itself, but also any pre-plea matters. "A defendant's [unconditional] plea of guilty,

Mitchell's second claim – substantial risk of harm enhancement

Mitchell next asserts that his attorney violated *Strickland* "by allowing Probation to enhance his sentence by three levels for substantial risk of harm." Doc. 28 at 5. This claim is scant, adding in his memorandum only that the guidelines do not apply "any time methamphetamine is manufactured in anything less than a professional lab." *Id.* at 9. He seems to argue that the record could not have supported the enhancement and that his counsel was thus remiss in not objecting to it. *See id.* at 10 ("There are no facts within the Petitioner's factual resume which would lend either Probation, the Government and especially his Counsel to conclude that any of the four factors to consider for substantial risk of harm applies to this case."). Mitchell offers no legal analysis to support this claim.

At issue, then, is the three-level bump imposed under § 2D1.1(b)(10)(C)(ii) ("the offense involved the manufacture of amphetamine or methamphetamine and the offense created a substantial risk of harm to . . .human life. . ."). The undisputed facts in Mitchell's case would support the enhancement, belying any *Strickland* prejudice in not objecting to it. The enhancement's application notes set forth the factors for the sentencing court "to include" in its "consideration":

---

made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in that defendant's court proceedings." *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997). And, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "[A] guilty plea establishes factual guilt and therefore all constitutional violations which are inconsistent with that factual guilt are waived by a guilty plea." *United States v. Bonilla*, 579 F.3d 1233, 1240 (11th Cir. 2009). Although the record clearly reflects that Mitchell's guilty plea was knowing, voluntary, and counseled, the issue of a *Broce* waiver is, however, moot because his guilty plea claim is automatically doomed under *Hill*.

>   (i) The quantity of any chemicals or hazardous or toxic substances sound at the laboratory, and the manner in which the chemicals or substances were stored.
>
>   (ii) The manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous toxic substances.
>
>   (iii) The duration of the offense, and the extent of the manufacturing operation.
>
>   (iv) The location of the laboratory (*e.g.*, whether the laboratory is located in a residential neighborhood or a remote area), and the number of human lives placed at substantial risk of harm.

U.S.S.G. § 2D1.1, cmt. 20.

The undisputed facts supported the enhancement.

First, the case against Mitchell arose out of a fire at his trailer where he manufactured methamphetamine. Law enforcement was "informed that the burned victim, Tony Mitchell, was burned on the lower half of his body. Mitchell informed [Corporal Dan] Hall that he was burned in an accident while burning copper wire to strip it." PSR at ¶ 8. Of course, fire and methamphetamine trafficking are synonymous. "[S]moke was coming from the door, the windows, and the roof." *Id.* at ¶ 10. This was not the first time Mitchell was injured in a methamphetamine production-related fire, belying any suggestion that this most recent fire's relationship to his drug trade was a coincidence. His PSR reflects that his own admission that he was "involved in a methamphetamine lab explosion in August 2009, and again in November 2009." *Id.* at ¶ 61 (suffering burns to his face, neck, legs, hands, back, etc.: "over sixteen percent of his total body surface area"). Indeed, the November meth-fire admitted to by Mitchell was the fire in the instant case. *See* Doc. 1 (count one charged his offense occurring on or about November 19, 2009); PSR at ¶ 61 (The University of Alabama Medical Center did not provide records for the defendant's admittance on November 19, 2009, which is related to the instant

federal offense."). Mitchell's suggestion that there was no proof to sustain the "substantial risk of harm to human life" enhancement is odd, considering that in the process he caught his trailer on fire and was burned. *United States v. Layne*, 324 F.3d 464, 468-69 (6th Cir. 2003) (as to the production of methamphetamine: "these chemicals and substances are utilized in a manufacturing process that is unstable, volatile, and highly combustible. Even small amounts of these chemicals when mixed improperly, can cause explosions or fires.") (quoting H.R. REP. 106-878, at *22-*23 (Sept. 21, 2000), regarding the rationale behind anti-methamphetamine legislation).

Second, at the scene of the fire law enforcement discovered – as accoutements of methamphetamine production – "a can of Coleman camp fuel . . . [and] anmonium nitrate [fertilizer] near the front door" of the trailer. *Id.* at ¶ 11. It should go without saying that these are highly combustible – and highly dangerous – materials that could cause a fire if ignited during the methamphetamine production process (or even through an innocent scenario). *See* U.S.S.G. § 2D1.1, cmt. 20. (factor: "(i) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored."). *See also Layne*, 324 at 470 (listing "Coleman fuel" among methamphetamine production components that are "flammable and can be explosive.").

Third, a loaded sawed-off shotgun was found in the trailer, which (through his admission to the § 924(c)(1) charge) was an instrument of Mitchell's drug trafficking – and a highly dangerous one. A loaded Browning .22 caliber rifle also was found. PSR at ¶¶ 12, 13. The sentencing court certainly was entitled to take this offense characteristic into consideration. *Cf. United States v. Beckles*, 565 F.3d 832, 843 (11th Cir. 2009) (observing that sawed-off shotguns

have received special treatment under the law because those firearms are "inherently dangerous and when possessed only serve violent purposes.") (quoting U.S.S.G. Appx. C. Amend. 674 (2004)).

Fourth, Mitchell's meth-lab trailer was located behind the house where his parents resided, at 18901 Three Rivers Road in Seminole, Alabama. PSR at ¶¶ 8, 58; Doc. 16 at 16 (Mitchell's father "gave Deputy Dollarhide directions to get to his son's trailer, which was located behind his residence."). *See* U.S.S.G. § 2D1.1, cmt. 20 (factor: "(iv) The location of the laboratory (*e.g.*, whether the laboratory is located in a residential neighborhood or a remote area), and the number of human lives placed at substantial risk of harm.").

And fifth, Mitchell's methamphetamine operation was ongoing, spanning at least from the time he was burned in a meth-production fire in August 2009 through the instant offense which occurred in November 2009. PSR at ¶ 61. In fact, Mitchell's sister told law enforcement that he "began manufacturing methamphetamine shortly before the first fire that destroyed the trailer where he resided at that time." Doc. 16 at 16. *See* U.S.S.G. § 2D1.1, cmt. 20 (factor: "(iii) The duration of the offense, and the extent of the manufacturing operation."). *See also Layne*, 324 F.3d at 470 (a methamphetamine laboratory "operating for at least two weeks, and perhaps several weeks" would be a factor favoring imposition of the enhancement).

Thus, the claim is without merit because Mitchell cannot show that any objection to the enhancement would have had any reasonable probability of being sustained by the sentencing court. "[T]hat the errors had some *conceivable* effect on the outcome of the proceeding is insufficient to show prejudice." *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (emphasis added) (quoting *Strickland*, 466 U.S. at 693). "*Strickland* asks if a different result is 'reasonably

probable,' not whether a different result is 'possible.'" *Cooper v. Sec'y for Dep't. of Corr.*, __ F.3d __, 2011 WL 2899623, *23 (quoting *Ferguson v. Sec'y for Dep't of Corr.*, 580 F.3d 1183, 1198-99 (11th Cir. 2009)). Mitchell could not even win by attempting to prove that he suffered "a *possibility* of prejudice." Rather, he must demonstrate "that it worked to his *actual* and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 171 (1982) (emphasis in original). At the end of the day, counsel's failure to raise a meritless claim simply "cannot prejudice a client." *United States v. Whitfield*, 960 F.2d 970, 974 (11th Cir. 1992) (citing *Strickland*, 466 U.S. at 692-93). The claim is due to be denied.

Mitchell's third claim – procedural default

Mitchell's third claim does not sound in ineffective assistance of counsel. Rather, it is a substantive claim challenging the factual basis for his guilty plea. *See* Doc. 28 at 5 ("Petitioner challenges the adequacy of factual admissions to support his conviction of Count 2, 18 U.S.C. 924(a)(1), using and carrying a firearm in connection with a drug trafficking felony."). The claim, however, is wholly vague. All he offers by way of explanation is the conclusory statement that he "is factually and actually innocent of the Count Two charge. There was an actual error in charging Petitioner with Count 2 when no facts were presented of present which would support the guns were used or carried in a drug crime." *Id.* at 10.

Mitchell leaves us to guess why he was not guilty of the § 924(c)(1) charge to which he pleaded guilty. Regardless, though, the claim is procedurally defaulted from habeas review. Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *Frady*, 456 U.S. at 165. A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." *Id*. at 164. Thus, "[i]f issues are raised and

considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979).[2] By the same token, claims not raised on direct appeal generally may not be considered at the *habeas* stage. *See, e.g., Black v. United States*, 373 F.3d 1140, 1142 & n.2 (11th Cir.), *cert. denied*, 543 U.S. 1080 (2005) (if a challenge to a conviction or sentence is not made on direct appeal, it is subject to procedural bar). "A defendant who fails to object at the trial court level to error he believes the court has committed or fails to raise such objection on appeal is procedurally barred from presenting his objection in a motion subsequently filed under 28 U.S.C. § 2255 absent a showing of cause and prejudice or a fundamental miscarriage of justice." *Genge v. United States*, 279 F. App'x 897, 898 (11th Cir. 2008) (unpublished) (citing *Frady*, 456 U.S. at 166-68 and *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)).

Not only did Mitchell not pursue this claim on direct appeal, he could never show any cause or prejudice for his procedural default because he expressly executed a notice of no appeal. Doc. 24. In any event, he does not attempt to show any cause for or prejudice stemming from the default. The claim is due to be denied.[3]

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to September 30, 1981.

[3] And, again, the claim also concerns a plea-related matter that is waived as per *Broce*. *See* footnote 1, *supra*.

Evidentiary Hearing

Finally, no evidentiary hearing is needed because Mitchell's claims are due to be denied as a matter of law, are affirmatively contradicted by the record, *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002), or are otherwise capable of resolution based on the existing record. *Schultz v. Wainwright,* 701 F.2d 900, 901 (11th Cir. 1983).  Mitchell also is not entitled to an evidentiary hearing because his claims "are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *see also Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004); *Chandler v. McDonough,* 471 F.3d 1360, 1363 (11th Cir. 2006) (§ 2254 case citing "clear precedent" that conclusory allegations "are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support.").  "[I]f the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, a district court is not required to hold an evidentiary hearing." *United States v. Bejacmar*, 217 F. App'x 919, 921 (11th Cir. 2007) (unpublished) (citing *Aron*, 291 F.3d at 715).  His claims are accordingly due to be denied without an evidentiary hearing.

Respectfully submitted,

KENYEN R. BROWN
UNITED STATES ATTORNEY
By:
s/Steven E. Butler
Steven E. Butler (BUTLS0563)
Assistant United States Attorney
United States Attorney's Office
63 South Royal Street, Suite 600
Mobile, Alabama  36602
Telephone:  (251) 415-7102
Fax:  (251) 441-5131
E-mail: steven.butler@usdoj.gov

**CERTIFICATE OF SERVICE**

      I certify that on August 31, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to any counsel of record, as well as to this *pro se* defendant at his last known mailing address: #07774-003, Edgefield Federal Correctional Institution, Post Office Box 725, Edgefield, South Carolina 29824.

                                                   s/ Steven E. Butler
                                                   Steven E. Butler
                                                   Assistant United States Attorney