# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

Tony Lee Mitchell,                    )
                                      )
     Petitioner/Defendant,          )     Civil Action No. 11-00379-CG
                                      )
v.                                    )     Criminal No. 09-00281-CG-N
                                      )
United States of America,             )
                                      )
     Respondent.                    )

## REPORT AND RECOMMENDATION

Petitioner Tony Lee Mitchell, a federal prison inmate proceeding *pro se*, has filed a timely motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, and brief in support (Doc. 28); the United States has filed a response in opposition (Doc. 32), to which Mitchell has replied (*see* Doc. 36). Through separate pleadings, Mitchell has requested an evidentiary hearing (Doc. 35); moved to "compel summary action" on his petition (Doc. 70); moved "to enlarge" his petition (Doc. 71); sought to add a fourth claim for ineffective assistance of counsel (Doc. 74); and moved "to request additional entries into the expanded record" (Doc. 76).[1] This action is now before the undersigned United States Magistrate Judge for entry of a

---

[1] His motion "to enlarge" the record does not request that the Court enlarge the evidentiary record before it; rather, Mitchell discusses the applicability of a recently Seventh Circuit decision to the facts of his case (Doc. 71). In another filing (Doc. 74), Mitchell appears to recast his efforts to compel the United States to file a Rule 35(b) motion to reduce his sentence as a third claim for ineffective assistance against his trial counsel (ostensibly, a fourth ground for habeas relief). And in his last filing, Mitchell makes additional legal arguments related to his claim that his counsel was constitutionally ineffective during the guilty plea. The undersigned will address both motions separately below.

report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Proceedings. For the reasons explained herein, it is **RECOMMENDED** that Mitchell's § 2255 petition, as amended (*see* Doc. 74), be **DENIED**; that the Court find that an evidentiary hearing is not necessary; and that the Court find that Mitchell is not entitled to a certificate of appealability and is therefore not entitled to appeal *in forma pauperis*.

## I.    Applicable Background.

A five-count indictment (Doc. 1) was returned against Mitchell in December 2009. The indictment contained one count of attempting to manufacture methamphetamine, in violation of 21 U.S.C. § 846 (Count 1); one count of using, carrying, or possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count 2); one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count 3); one count of possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d) (Count 4); and one forfeiture allegation (Count 5). In January 2010, Mitchell was arrested and arraigned, and Assistant Federal Public Defender Latisha Colvin was appointed to represent him in this Court. (*See* Doc. 5.)

Mitchell appeared before Judge Granade on February 18, 2010 to plead guilty pursuant to a written plea agreement (Doc. 16). (*See* Doc. 30.) Pursuant to the plea agreement, Mitchell agreed to plead guilty to all counts in the indictment. (*Id.*)

The offense conduct in the factual resume (*see* Doc. 16 at 14-19) involving a law enforcement response to Mitchell's burning trailer used as a location for methamphetamine production in part provides:

> [The officer] was advised by the paramedics that the subject, Tony Mitchell, was burned on the lower half of his body. . . . The officers knew that Mitchell had been previously involved in a house fire, and that he was suspected of involvement with manufacturing methamphetamine. [Mitchell's father, who reported the fire,] gave [the deputy] directions to get to his son's trailer, which was located behind his residence. . . .
>
> [After the fire was under control,] fire fighters [] noticed several items in the trailer which appeared to be components of a methamphetamine lab. [The fire chief] specifically noticed a can of Coleman camp fuel . . . [and] ammonium nitrate near the front door. . . . Inside the trailer, the officers found a sawed off shot gun . . . and a Browning 22 caliber rifle . . . . Both of them were loaded.
>
> [An agent] interviewed the defendant's sister . . . [who] said [Mitchell] began manufacturing methamphetamine shortly before the first fire that destroyed the trailer where he resided at that time. She said Mitchell told her that he was buying pills from as far away as New Orleans and Tallahassee.

(Doc. 16 at 15-18.)

The Presentence Investigation Report (or PSR), prepared by the United States Probation Office for this District and filed August 5, 2010, determined Mitchell's base level offense to be 24, pursuant to U.S.S.G. § 2D1.1(c)(8). (Doc. 20 at 8.) Because, however, the offense involved the manufacture of methamphetamine and created a substantial risk of harm to human life, the offense level was increased by 3 points pursuant to U.S.S.G. § 2D1.1(b)(10)(C)(ii). (*Id.*) Mitchell was credited 3 points for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). (*Id.*) His adjusted offense level as to Counts 1, 3, and 4 was accordingly determined to be 24. (*Id.* at 9.) That, along with his criminal history category of III, resulted in an advisory guideline range of 63 to 78 months imprisonment. (*Id.* at 18.) However, due to his conviction for possession of a firearm in furtherance of a drug trafficking

crime (Count 2), a five-year mandatory minimum prison term was to be consecutively imposed. (*Id*.) Neither the United States nor Mitchell objected to the PSR.

Judge Granade conducted a sentencing hearing on August 17, 2010 and sentenced Mitchell to a low-end guideline-range of 63 months and a consecutive mandatory minimum sentence of 60 months for the possession of a firearm in furtherance of a drug trafficking crime. (*See* Doc. 31.) Mitchell was also sentenced to three years of supervised release following his release from prison. (*Id*.) On the same day Mitchell was sentenced, August 17, 2010, he entered a notice of no appeal (Doc. 24). Thus, no direct appeal was filed.

Instead, Mitchell timely filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255 (Doc. 28), and his original claims on collateral attack are as follows:

> Ground one: Counsel violated Petitioner's Sixth Amendment right to effective assistance of Counsel when she advised and allowed Petitioner to plead guilty to Count 2, a 924(c)(1) violation while knowing the guns were not used or carried in the furtherance of a drug trafficking crime.

> Ground two: Counsel violated Petitioner's Sixth Amendment rights by allowing Probation to enhance his sentence by three levels for substantial risk of harm. Petitioner's Counsel failed to provide Petitioner a duty to use knowledge and skill in defending him and further failed to provide any adversarial process to the sentence hearing.

> Ground three: Petitioner challenges the adequacy of factual admissions to support his conviction of Count 2, 18 U.S.C. 924(c)(1), using and carrying a firearm in connection with a drug trafficking felony.

(*Id*. at 4.)

## II.    Analysis.

### A.    Grounds One and Two: Ineffective Assistance of Counsel.

To establish a claim of ineffective assistance of counsel, Mitchell is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different.  *See generally Strickland v. Washington*, 466 U.S. 668 (1984).  He "bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."  *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926 (2002); *accord Cooper v. Secretary, Dep't of Corrs.*, 646 F.3d 1328, 1351 (11th Cir. 2011).

To succeed on such a claim, Mitchell "must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  And "[w]hen analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."  *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted).  As the Supreme Court recently explained,

> "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, ---, 130 S. Ct. 1473, 1485 (2010).  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest

> "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689. The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Id.* at 690.

*Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 788 (2011) (some internal citations modified or omitted).

Furthermore, Mitchell "must affirmatively prove prejudice" to succeed on an ineffective assistance of counsel claim. *Butcher v. United States*, 368 F.3d 1290, 1294 (11th Cir. 2004). "[T]hat the errors had some conceivable effect on the outcome of the proceeding" is insufficient to show prejudice. *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (quoting *Strickland*, 466 U.S. at 693).

And when applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527 U.S. 1008 (1999); *see also Butcher*, 368 F.3d at 1293 ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

### 1. Guilty Plea.

Mitchell purports to challenge the sufficiency of his guilty plea, alleging that

his attorney provided ineffective assistance "when she advised and allowed Petitioner to plead guilty to Count 2, a [§] 924(c)(1) violation while knowing the guns were not used or carried in the furtherance of a drug trafficking crime." (Doc. 28 at 5.)

> The two-pronged *Strickland* test is [also] applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same in that the attorney's conduct must fall within the range of reasonable conduct. *Id.* at 58. Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, however, and in the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id.*
>
> The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59. In other words, ***in order to satisfy the prejudice requirement, a defendant claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial***. *Id.* The best way to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial is to determine whether a petitioner had available a defense that would likely have borne fruit at trial. *Upshaw v. United States*, No. 2:07-cv-111-FtM-33DNF, 2008 WL 638261, at *1 (M.D. Fla. Mar. 5, 2008) (citing *Hill*, 474 U.S. at 59).

*Rosado v. Secretary, Dep't of Corrs.*, No. 8:09-cv-02518-EAK-EAJ, 2010 WL 2976886, at *4 (M.D. Fla. July 20, 2010) (some citations modified) (emphasis added); *see also Missouri v. Frye*, --- U.S. ---, 132 S. Ct. 1399, 1409 (2012) (affirming that that decision "[did] nothing to alter the standard laid out in *Hill*. In cases where a

defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" (quoting *Hill*, 474 U.S. at 59)).

### i. Performance.

Contrary to Mitchell's position,[2] he has not shown that his attorney's performance was deficient. The language of 18 U.S.C. § 924(c)(1)(A) provides that "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, ***possesses*** a firearm, shall, in addition to the punishment provided for such . . . drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years." The facts as

---

[2] In arguing that his attorney was ineffective "when she allowed and even advised [him] to plead guilty to count two, a [§] 924(c)(1) violation while knowing the guns were not either used or carried in relation to any drug crime" (Doc. 36 at 1), Mitchell seems to focus on the following comment made by counsel during his guilty plea hearing:

> THE COURT: All right. And as to count two, the United States would have to prove that you used or carried a firearm during an in relation to a drug trafficking felony that was charged in count one. Do you understand what the government would have to prove to convict you of that?
>
> DEFENDANT MITCHELL: Yes, ma'am.
>
> .        .        .
>
> MS. COLVIN: Your Honor, as it relates to the count two, 924(c), I think the "possession in furtherance of" was what was applicable here. I know we just mentioned the use or carrying.
>
> THE COURT: Use or carrying? All right. Do you understand you could be convicted of that offense if you possessed that firearm in furtherance of the drug trafficking offense?
>
> DEFENDANT MITCHELL: Yes, ma'am.

(Doc. 30 at 14-16.)

stated in the signed factual resume clearly show that Mitchell possessed not only a loaded Browning 22 caliber rifle in the trailer where he conducted his illegal methamphetamine operation, but also a loaded sawed-off shotgun. (Doc. 16 at 17).[3] Thus, it is irrelevant whether Mitchell's attorney knew he did not "use" or "carry" the weapons—she knew that he possessed them, and she likely knew that the Government could prove he possessed them in furtherance of his drug crime.[4]

> Plea bargains are the result of complex negotiations suffused with uncertainty, and ***defense attorneys must make careful strategic choices in balancing opportunities and risks***. . . . These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's

---

[3] Interestingly, § 924(c)(1)(B) provides in pertinent part that "[i]f the firearm possessed by a person convicted of a violation of this subsection . . . [is a] ***short-barreled shotgun***, the person shall be sentenced to a term of imprisonment of not less than 10 years . . . ." *Id.* (emphasis added). And the signed factual resume provides that the Spartan model 100 single shot 12 gauge shotgun "had a barrel length of 12.5 inches and an overall length of 20.5 inches." (Doc. 16 at 17), which comports with the statutory definition of "short-barreled shotgun"—"a shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun (whether by alteration, modification or otherwise) if such a weapon as modified has an overall length of less than twenty-six inches." 18 U.S.C. § 921(a)(6). Although not mentioned in any of the motions or hearings, this might have played a role in Mitchell's attorney's strategic decision to advise a guilty plea. *Cf. Premo*, 131 S. Ct. at 741 (in negotiating a plea bargain, "defense attorneys must make careful strategic choices in balancing opportunities and risks").

[4] The undersigned accordingly rejects any arguments Mitchell makes in his "motion to request additional entries into the expanded record" (Doc. 76), which appears related to his previous "use" or "carry" arguments. (*See generally id.*; *id.* at 4 ("Again, Petitioner asks the government, 'Where is the alleged victim for the 'use' , and 'carry'? It would be safe to say, that beyond a reasonable doubt, the government cannot produce on this theory, and truthfully, cannot prove that these guns were 'used' or 'carried' during the commission of a drug trafficking crime.").)

judgment: ***An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial.*** In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was ***manifest deficiency*** in light of information then available to counsel. *Lockhart v. Fretwell,* 506 U.S. 364, 372 (1993).

*Premo v. Moore*, --- U.S. ---, 131 S. Ct. 733, 741 (2011) (emphases added and citation modified).

In light of the above, it is the undersigned's determination that Mitchell's attorney's strategic decision to advise him to plead guilty to count two cannot be deemed deficient. Accordingly, Mitchell has failed to satisfy the *Strickland* performance prong required to show ineffectiveness of counsel.

## ii.    Prejudice.

Furthermore, Mitchell has also failed to prove the prejudice prong of *Strickland*. At no point in any of his submissions to this Court has Mitchell even attempted to allege under *Hill*, much less prove, that but for his attorney's supposed errors he would not have pleaded guilty and instead would necessarily have opted to go to trial. (*See* Doc. 28 (incorrectly attempting to prove prejudice by stating that his attorney's actions "affected his sentence and punishment."); Doc 36 at 5 (again, incorrectly attempting to prove prejudice "by showing that if his attorney had acted competently, he would not have had a mandatory minimum 60 month sentence" and arguing that "the unprofessional errors of counsel prejudiced him and his sentence directly by 60 months" which "definitely changes the proceedings").) In fact, in his prayers for relief, Mitchell has merely asked this Court "to have his sentence vacated and to be resentenced." (Doc. 28 at 10; *see also* Doc. 36 at 5 (arguing again

that "his sentence should be vacated and remanded").)  This is fatal to his claim for ineffective assistance of counsel with regard to his guilty plea.

Mitchell has failed to show that his attorney's performance was deficient, or that but for such alleged deficiencies, he would have opted to go to trial rather than plead guilty.  In fact, Mitchell himself expressly exclaimed his satisfaction with counsel during his plea colloquy with this Court (Doc. 30).[5]  Thus, taking Mitchell at his own word [6] and analyzing the previously discussed law, his claim of ineffectiveness of counsel as to his guilty plea necessarily fails.  As such, Mitchell is entitled to no relief under this ground.

---

[5]     During his plea colloquy, Mitchell was asked the following questions:

- [H]ave you fully discussed [your] charges and the case in general with your attorney?

- Do you understand the charges pending against you?

- Are you fully satisfied with counsel, representation, and advice given to you in your case by your attorney?

- Did [you] have the opportunity to read and discuss the plea agreement with your attorney before you signed it?

- Do you understand the terms of your agreement?

- Are you pleading guilty of your own free will because you are guilty?

(*See* Doc. 30 at 4-6.)  In response to all of the above-listed questions, Mitchell responded affirmatively.  (*See id.*)

[6]     "[T]he representations of the defendant[,] . . . as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding."  *Thompson v. Wainwright*, 787 F.2d 1447, 1460 (11th Cir. 1986) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  "There is a strong presumption that statements made during the plea colloquy are true."  *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994); *see also United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) (explaining that the defendant bears a heavy burden to show that his statements under oath were false).

### 2. Sentencing.

As to sentencing, Mitchell asserts that his attorney was ineffective "by allowing Probation to enhance his sentence by three levels for substantial risk of harm." (Doc. 28 at 4.) Specifically, Mitchell seems to claim that the record did not support the enhancement and that his counsel was ineffective in not objecting to it. (*See* Doc. 28 at 9 ("There are no fact[s] within the Petitioner's factual resume which would lend either Probation, the Government[,] and especially his Counsel to conclude that any of the four factors to consider for substantial risk of harm applies to this case."); *see also* Doc. 36 at 11 ("[A]n attorney performing her duty to the defendant[] would have, even should have[,] objected to the three level increase[] because the government never met the factors required to charge the Petitioner with the enhancement to begin with . . . .").) Mitchell further alleges that counsel's failure to object to the enhancement "increased [his] punishment[,] . . . therefore prejudicing him . . . ." (Doc. 36 at 11.) Because the undersigned finds that neither prong of the *Strickland* test has been satisfied, Mitchell is entitled to no relief under this ground.

At issue is the three-level enhancement imposed under U.S.S.G. § 2D1.1(b)(10)(C)(ii)[7] ("the offense involved the manufacture of . . . methamphetamine and the offense created a substantial risk of harm to . . . human life . . ."). (*See* Doc. 20 at 8 (increasing Mitchell's offense level by three levels pursuant to §

---

[7] This portion of the Guidelines from 2010 is now listed under § 2D1.1(b)(13)(C)(ii) in the most recent 2012 edition of the United States Sentencing Commission Guidelines Manual. Although the numbering has changed, the substance remains the same.

2D1.1(b)(10)(C)(ii)).) The enhancement's application notes set forth four factors for the sentencing court to consider:

(i)     The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.

(ii)    The manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous toxic substances.

(iii)   The duration of the offense, and the extent of the manufacturing operation.

(iv)    The location of the laboratory (e.g., whether the laboratory is located in a residential neighborhood or a remote area), and the number of human lives placed at substantial risk of harm.

U.S.S.G. § 2D1.1, cmt. 20.[8]

It is important to remember that in analyzing the above four factors, courts are ultimately determining whether the specific facts of the case show that the offense of manufacturing methamphetamine created a substantial risk to human life. Accordingly, and contrary to Mitchell's argument, the facts appear to support the enhancement. Thus, counsel's failure to object was "objectively reasonable" and, moreover, did not prejudice Mitchell by affecting the outcome of the case.

### i.     Performance.

The facts as listed in the factual resume (Doc. 16 at 14-19), and PSR (Doc. 20 at 4-20), appear to support imposition of the sentencing enhancement,[9] such that

---

[8]     This note now appears as comment 18(B)(i) in the 2012 edition of the United States Sentencing Commission Guidelines Manual. Again, although the numbering has changed, the substance remains the same.

[9]     The factual resume, which Mitchell claims does not contain any information supporting the enhancement (Doc. 28 at 9), lists the elements of the offense and the facts

counsel's failure to object did not constitute deficient performance.[10]  Mitchell's allegation that there are "no fact[s]" in his factual resume that could lead to the application of "***any*** of the four factors" considered for the substantial risk of harm enhancement is simply false.  (Doc. 28 at 9 (emphasis added); Doc. 36 at 11.)  Although ***all*** four factors may not apply under the facts of this case, at least two undoubtedly do.[11]

Most notably, there were highly flammable and dangerous items, specifically "a can of Coleman camp fuel . . . [and] ammonium nitrate" (Doc. 20 at ¶ 11),[12] found

---

associated therewith.  (Doc. 16 at 14-19.)  Furthermore, Mitchell signed and dated the document, affirming that he "read the statement of facts and carefully reviewed every part of it with [his] attorney."  (*Id*. at 18.)  He acknowledged that he "understood it and [agreed] that [the facts were] accurate."  (*Id*.)

[10]     As to the performance determination, conduct must be evaluated from the attorney's perspective at the time in order to avoid the distorting effects of hindsight.  *See Strickland*, 466 U.S. at 689.  "There is a strong presumption that counsel's performance was reasonable and adequate . . . ." *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005) (citations omitted).  "The presumption of reasonableness is even stronger when we are reviewing the performance of an experienced trial counsel."  *Callahan v. Campbell*, 427 F.3d 897, 933 (11th Cir. 2005).

[11]     There is a circuit split on the issue of whether a court is obligated to explicitly consider **on the record** each factor.  *United States v. Moreno*, 32 Fed. App'x 637, 640 (11th Cir. 2008) (noting that the Eleventh Circuit has not squarely addressed the issue).  However, it is clear from the language of § 2D1.1 cmt. 20 and applicable case law that courts must at least reflect on each factor before imposing the enhancement.  *See id*.  More importantly, "[w]hile a district court must consider all four factors, ***it need not find that all are met in order to apply the enhancement***."  *United States v. Williams*, 514 Fed. App'x 379, 385 (4th Cir. Mar. 25, 2013) (per curiam) (emphasis added).  Additionally, although the factors may not be ignored, they are not exclusive.  *United States v. Pinnow*, 469 F.3d 1153, 1157 (8th Cir. 2006) (noting that Congress intended sentencing courts to "take into account the dangers inherent in methamphetamine manufacturing" in addition to considering the factors).

[12]     These items, along with several other common household chemicals found on the scene, such as drain cleaner and pseudoephedrine (Doc. 16 at 17), are commonly used in the increasingly popular "shake and bake" method of methamphetamine manufacture.  *Williams*, 514 Fed. App'x at 381.

on the scene of the burning trailer by fire law enforcement. *See* U.S.S.G. § 2D1.1, cmt. 20 ("(i) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored."); *United States v. Whelan*, 201 Fed. App'x 681, 684 (11th Cir. 2006) (per curiam) (recognizing that the presence of dangerous, combustible materials satisfies the first factor); *see also United States v. Layne*, 324 F.3d 464, 468-69 (6th Cir. 2003) (identifying "Coleman fuel" as a methamphetamine production component that is "flammable and can be explosive."). "Even small amounts of these chemicals, when mixed improperly, can cause explosions or fires." *Layne*, 324 F.3d at 468-69 (quoting H.R. REP. NO. 106-878, at 22-23 (Sept. 21, 2000)). The presence of such highly combustible and volatile materials in that particular environment supports imposition of the enhancement.[13]

Additionally, the duration and extent of the operation supports imposition of

---

Though simple, this method of methamphetamine manufacture is very dangerous. . . . [T]he mixture . . . is bomb-like and capable of exploding or blowing a hole wherein the mixture of chemicals and fire shoots out creating a flash fire. Moreover, the shake and bake method does not produce the signature chemical smell of a traditional methamphetamine lab, therefore, persons within a close proximity have no warning that they are in danger.

*Id.*

[13]     Mitchell appears to argue that because the Coleman fuel can and ammonium nitrate did not actually ignite during the incident, factor (i) is not met. (Doc. 36 at 9 ("[T]he Coleman fuel can and the ammonium nitrate were inside the trailer during the incident and were neither burned, nor did they ignite, so therefore . . . the quantity of products required to meet U.S.S.G. 2D1.1 cmt. 20, factor (i) was not met by the contents found at the scene.")). The undersigned finds this argument unpersuasive for obvious reasons. Factor (i) simply states that the quantity of chemicals or hazardous substances be considered, along with the manner in which they were stored. *See* U.S.S.G. § 2D1.1 cmt. 20. It certainly does not require that such chemicals explode or cause harm before they can be factored into the Court's consideration. *Id.*

the enhancement. The facts show that Mitchell's methamphetamine operation was ongoing, spanning at least three months. (*See* Doc. 20 at ¶ 61 ("Mitchell advises that he was involved in a methamphetamine lab explosion in August 2009, and again in November 2009."); Doc. 16 at 17 ("[T]he defendant's sister . . . said he began manufacturing methamphetamine shortly before the first fire that destroyed the trailer where he resided at that time.").) The extent of the operation is evidenced by Mitchell's four-state span for purchasing necessary ingredients,[14] as well as the variety of items procured from the trailer where the methamphetamine production took place.[15] Coupled with the information gathered from his sister and from his own history of involvement with methamphetamine lab explosions, the facts reasonably show that the duration and extent of Mitchell's operation was ongoing and quite involved. *See* U.S.S.G. § 2D1.1, cmt. 20 (2010) ("(iii) The duration

---

[14] Mitchell's sister informed authorities that "he was buying pills from as far away as New Orleans and Tallahassee" to use in his methamphetamine production operation. (Doc. 16 at 17-18.) Such an extensive manufacturing process supports application of the enhancement. *See United States v. Houchins*, 364 F.3d 182, 189 (4th Cir. 2004) (deeming evidence of the defendant purchasing key ingredients in different states for the production of methamphetamine and transporting them back to the state of manufacture "a manufacturing process . . . spanning 170 miles and two states" and finding this evidence in support of the enhancement), *judgment vacated and remanded on other grounds*, 543 U.S. 1104 (2005).

[15] Mitchell's argument that "[b]ased on the minimal quantities of components [in the trailer, he] had just begun to manufacture meth[,]" (Doc. 36 at 7), does not persuade the undersigned that the production was limited in duration and extent. Although Mitchell's laboratory may not have been considered a "superlab," *see, e.g., Moreno v. United States*, No. 1:06-CR-461-CC-GCB, 2012 WL 7829200, at *3 (N.D. Ga. Mar. 13, 2012), the facts do reveal an abundance of items used to facilitate the production of methamphetamine. (Doc. 16 at 17 (listing "pseudoephedrine, two glass pipes used to smoke methamphetamine, a package of coffee filters, a can of drain cleaner, a funnel with residue, a glass jar with used filtered paper towels, miscellaneous glassware, two bottles with tubing attached to the tops, wire cutters, a jar with an unknown substance, and a fifty pound bag about 25 percent full of ammonium nitrate" as items found inside the trailer)).)

of the offense, and the extent of the manufacturing operation."); *Whelan*, 201 Fed. App'x at 684 (finding evidence that "the drug manufacturing process had taken place and was ongoing" to be sufficient to establish factor (iii)); *see also Layne*, 324 F.3d at 470 (finding that a methamphetamine lab "operating for at least two weeks, and perhaps several weeks" would be a factor supporting imposition of the enhancement).

Counsel's performance in failing to object to the enhancement was not deficient. "The test for [deficiency] is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more." *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc)). Rather, the inquiry under *Strickland* is limited to "whether some reasonable lawyer could have acted, in the circumstances, as defense counsel acted . . . ." *Conklin v. Schoefield*, 366 F.3d 1191, 1204 (11th Cir. 2004) (quoting *Waters*, 46 F.3d at 1518).[16] Due to the nature of the facts and circumstances[17] of this case

---

[16] *See also Moreno*, 2012 WL 7829200, at *4 ("The test [for deficiency] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992))), *report and recommendation adopted*, 2013 WL 1339718 (N.D. Ga. Apr. 1, 2013); *id.* ("[P]etitioner must demonstrate that 'no competent counsel would have taken the action that his counsel did take.'") (quoting *United States v. Freixas*, 332 F.3d 1314, 1319-20 (11th Cir. 2003)).

[17] Although not precisely pertinent to a particular factor mentioned in § 2D1.1 cmt. 20, it is certainly worth considering and noting that a loaded sawed-off shotgun was found on the scene of the methamphetamine lab, along with a loaded Browning rifle. (Doc. 20 at ¶12; Doc. 16 at 17.); *United States v. Beckles*, 565 F.3d 832, 843 (11th Cir. 2009) (observing that sawed-off shotguns have received special treatment under the law because those firearms are "inherently dangerous and when possessed only serve violent purposes") (quoting U.S.S.G. Appx. C. Amend. 674 (2004)). In fact, the presence of the sawed-off

(favoring imposition of the enhancement), counsel's failure to object was not "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Thus, the performance prong of *Strickland* has not been proven as to this contention.

## ii. Prejudice

Even if we assume that the sentencing court might have ***possibly*** sustained an objection to the enhancement had Mitchell's attorney made one, Mitchell still has not shown that his attorney's failure to object satisfies the *Strickland* prejudice test.[18] *Strickland* requires Mitchell to prove that there is a "reasonable probability,"

---

shotgun was even suggested to the Court as being a factor that might warrant an upward departure from the guideline range. (Doc. 20 at ¶ 95 ("[T]he Court may want to consider the aggravating factor of the defendant's possession of a sawed-off shotgun, which was not taken into account by the Guidelines . . . . [T]he guidelines have not provided any greater punishment for the possession of the sawed-off Spartan shotgun than the defendant would be subject to if he had possessed only the Browning rifle.").)

[18]    Mitchell cites *Glover v. United States*, 531 U.S. 198 (2001), in an effort to argue that he was prejudiced:

> In an opinion by Kennedy, J., expressing the unanimous view of the court, it was held that (1) for purposes of the Strickland v. Washington rule for obtaining relief for an alleged violation of the Sixth Amendment right to effective assistance of counsel, a defendant establishes prejudice where it is shown that (a) ***the trial court erred in a Guidelines determination***, and (b) as a result of such error, about which counsel failed to argue, the defendants sentence was increased; . . . the defendant established prejudice.

(Doc. 36 at 12-13) (emphasis added).

However, as previously explained and discussed, the sentencing court committed no error by imposing the enhancement. *Compare supra* at 12-17, *with Glover*, 531 U.S. at 200, 204 (addressing an actual sentencing miscalculation due to misgrouping of charges and the Seventh Circuit's decision to include an additional requirement for the *Strickland* prejudice test (whether a sentence increase was significant enough to constitute prejudice), but not giving an opinion on the ultimate merits of the ineffective assistance claim); ultimately recognizing that "[*Glover* was] not a case where trial strategies, in retrospect, might be criticized for leading to a harsher sentence.").

not mere possibility, that but for his attorney's failure to object to the imposition of the enhancement, the outcome would have been different. *See Strickland*, 466 U.S. at 694; *see also Cooper*, 646 F.3d at 1353-54 (11th Cir. 2011) ("*Strickland* asks if a different result is 'reasonably probable,' not whether a different result is 'possible.'" (quoting *Ferguson v. Secretary for Dep't of Corr.*, 580 F.3d 1183, 1198-99 (11th Cir. 2009))). He "must show 'not merely that the errors at his trial created a ***possibility*** of prejudice, but that they worked to his ***actual*** and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis provided in *Frady*). Taking into account the dangerous, flammable, and volatile chemicals found on the burning methamphetamine production site, the significant amount of production materials discovered, the four-state radius utilized for gathering the drug ingredients, and the loaded weapons (including a sawed-off shotgun) found on the scene of the crime, even if Mitchell's attorney had objected to the enhancement, a different result would not have been ***reasonably probable***. Thus, Mitchell has not met this burden—he has failed to satisfy the *Strickland* prejudice prong as to this contention.

Accordingly, the undersigned finds that Mitchell is entitled to no relief under this ground.

## B. Ground Three: Adequacy of Guilty Plea's Factual Basis.

Mitchell's third ground does not allege ineffective assistance of counsel;

---

Regardless, because the facts and circumstances of Mitchell's case support the sentence imposed, Mitchell's argument fails.

rather, it is a substantive claim challenging "the adequacy of factual admissions to support his conviction." (Doc. 28 at 4.) Essentially, Mitchell is challenging the factual basis for his guilty plea. This argument was not presented on direct appeal and, as such, cannot be made on collateral attack. *See Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) ("Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." (citations omitted)). Accordingly, this claim is procedurally barred from habeas review.

Habeas relief is an extraordinary remedy. It "may not do service for a []
[direct] appeal." *Frady*, 456 U.S. at 165. A defendant who has waived[19] or

---

[19]    Mitchell waived his right to appeal his imposed sentence when he entered into his Plea Agreement.

17.    The defendant acknowledges that he is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. In exchange for the recommendations made by the United States in this Plea Agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence imposed in this case. . . .

18.    With the limited exceptions noted below, *the defendant also waives his right to challenge any sentence so imposed, or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255.*

19.    The defendant reserves the right to contest in an appeal or post-conviction proceeding any of the following:

    a. Any punishment imposed in excess of the statutory maximum;

    b. Any punishment that constitutes an upward departure from the guideline range; or

    c. A claim of ineffective assistance of counsel.

(Doc. 16 at 11 (emphasis added).)

exhausted his right to appeal is presumed to stand "fairly and finally convicted." *Id.* at 164. Thus, claims not raised on direct appeal generally may not be considered at the habeas stage. *See, e.g., Black v. United States*, 373 F.3d 1140, 1142 & n.2 (11th Cir. 2004) (if a challenge to a conviction or sentence is not made on direct appeal, it is subject to procedural bar).

Although procedural default can be excused if a petitioner can show "cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error[,]" *Lynn*, 365 F.3d at 1234 (emphasis omitted), Mitchell has failed to make such a showing in his petition. In fact, Mitchell expressly executed a notice of no appeal (Doc. 24), belying his attempt to show cause or prejudice. *Cf. United States v. Davis*, Criminal No. 08–0052–CG; Civil Action No. 09–00502–CG–N, 2010 WL 5239243, at *4-5 (S.D. Ala. Nov. 22, 2010) (as to a defendant's habeas claim "that his guilty plea was not knowing and voluntary because he did not understand the nature of the charge[,]" noting that it was "undisputed that Davis failed to raise this claim on appeal. In fact, after the sentencing hearing Davis and his counsel filed a "Notice of No Appeal" that "acknowledged that he consulted with his attorney and recognized his right to appeal but choose not to do so. . . . Consequently, Davis procedurally defaulted on this claim and his entitlement to collaterally attack his plea is ***greatly*** limited." (emphasis added)), *report and recommendation adopted*, 2010 WL 5239242 (S.D. Ala. Dec. 14, 2010).

---

As none of the listed exceptions apply to his substantive claim, Mitchell waived his right to appeal directly or collaterally. Mitchell further affirmed his understanding of this waiver during his sentencing hearing. (*See* Doc. 30 at 12.)

Accordingly, this claim should also be denied.

### C.     Mitchell's "Motion to Enlarge" (Doc. 71).

In his "motion to enlarge" the § 2255 petition (Doc. 71), Mitchell appears to argue that a recent decision by the United States Court of Appeals for the Seventh Circuit, *United States v. Miller*, --- F.3d ----, 2013 WL 3215670 (7th Cir. June 27, 2013), is applicable to his third habeas ground, related to his conviction under 18 U.S.C. § 924(c)(1).  He is mistaken.

First, as explained above, Mitchell's third ground for relief challenges the factual basis for his guilty plea.  Mitchell's failure to pursue a direct appeal of his conviction, coupled with his failure (1) to show cause for not raising this challenge on direct appeal and (2) to allege actual prejudice from such an error, prevents the Court from addressing this ground on collateral attack.

Second, while Mitchell was sentenced pursuant to the Armed Career Criminal Act (the "ACCA")—specifically, 18 U.S.C. § 924(c)(1)(A)(i) (which required imposition of a consecutive five-year mandatory minimum sentence because Mitchell possessed a firearm (two, actually: the sawed-off Spartan shotgun and the Browning rifle) in furtherance of a drug trafficking crime)—in *Miller*, the Seventh Circuit, addressed a separate provision of the ACCA: § 924(e)(1) (the "residual clause," which concerns enhancements related to previous convictions for violent felonies and serious drug offenses).  In *Miller*, the Seventh Circuit reconsidered its prior case law and held that "mere possession of a short-barreled shotgun is not a violent felony for purposes of the ACCA."  2013 WL 3215670, at *1.  *But see supra* footnote 16 (citing case law from this circuit noting that sawed-off shotguns are

"inherently dangerous and when possessed only serve violent purposes"). Mitchell's conviction as to Count 2 has nothing to do with prior violent felony convictions and everything to do with his possession of a firearm in connection with a drug trafficking felony. Thus, even if this Court was required to apply a decision from another circuit, which it is not, *Miller* clearly is not applicable to Mitchell's underlying conviction on Count 2.[20]

### D. Ground Four: Ineffective Assistance (Attempt to Obtain a Sentence Reduction) (Doc. 74).

As to Mitchell's "amendment" to his petition (Doc. 74), filed July 24, 2013, the Court should apply Fed. R. Civ. P. 15's "relation back" principles, as set out in *Davenport v. United States*, 217 F.3d 1341 (11th Cir. 2000), and its progeny, and in *Mayle v. Felix*, 545 U.S. 644 (2005)), under which an amendment to a § 2255 petition is not time barred if the "claims filed or added [in the amendment] 'relate back' to timely-filed claims." *United States v. Sanders*, Civil Action No. 04-0042-CB; Criminal No. 98-00056-CB, 2007 WL 4285398, at *5 (S.D. Ala. Dec. 4, 2007) (citing *Davenport*); *see also United States v. Hames*, 431 Fed. App'x 846, 847 (11th Cir.

---

[20]     Mitchell also appears to merely cite three recent (2013) decisions from the United States Supreme Court: *Alleyne v. United States*, --- U.S. ----, 133 S. Ct. 2151 (2013); *Peugh v. United States*, --- U.S. ----, 133 S. Ct. 2072 (2013); and *Descamps v. United States*, --- U.S. ----, 133 S. Ct. 2276 (2013). Mitchell neither explains how any of these decisions apply to his case nor provides this Court with authority holding that any of them have been made retroactive to cases like Mitchell's. For example, as to *Alleyne*, *compare, e.g., United States v. Wimberly*, --- Fed. App'x ----, 2013 WL 3214988, at *1 (6th Cir. June 26, 2013) (per curiam) ("[T]he holding of *Alleyne* is irrelevant to this case because Wimberly[, like Mitchell,] entered a guilty plea and specifically admitted discharging a firearm during the credit-union robbery, the fact used to support his mandatory minimum sentence." (record citation omitted)), *with Luney v. Quintana*, Civil Action No. 6:13–003–DCR, 2013 WL 3779172, at *3 (E.D. Ky. July 18, 2013) (noting that "there is no indication in . . . *Alleyne* that the Supreme Court made [that] holding[] retroactive to cases on collateral review").

June 22, 2011) (per curiam) ("Rule 15 can be used in cases where a defendant files a timely § 2255 motion and then later files an amendment **or additional motion** that relates back to the original § 2255, but would otherwise be untimely." (emphasis added)). Construing this late-filed amendment liberally, the undersigned finds it "relates back" to Mitchell's timely-filed claims for ineffective assistance of counsel. (*See, e.g.,* Doc. 74 at 3 ("At the time this case was in the Court, prior to sentencing, [ ] **Attorney Colvin led Petitioner to believe** that if the Petitioner was to cooperate with the government . . . [he] would receive either a 5K1.1, or Rule 35(b), downward departure post-sentence reduction, in return for the cooperation, **and makes this the Fourth Ground for the § 2255 Petition**."); *id.* at 4-5 ("The plain and simple wording of the Plea Agreement . . . discusses this matter; i.e. the lack of the government keeping their end of this so-called one-sided bargain. Petitioner expected the reduction, and gave the information because Petitioner believed [he] would receive that reduction, not only by the plain and simple text, but **also because what then counsel Colvin led [h]im to believe** . . . .") (emphases added).)[21]

_____

[21]    To the extent it can be argued that Mitchell's late-filed amendment to his habeas petition presents two separate grounds—a claim related to the United States' alleged breach of the plea agreement **and** a separate claim related to ineffective assistance related to that breach—the substantive breach issue has already been litigated in this Court (and in the Eleventh Circuit). (*See, e.g.,* Doc. 60 at 1-3 (providing applicable background, including that, on February 29, 2012, Judge Granade denied (*see* Doc. 42) Mitchell's Rule 35(b) motion to compel (Doc. 41), filed February 27, 2012).)

Further, while a standalone claim for breach of the plea agreement may be factually related to Mitchell's timely-filed habeas petition, such a claim is based on a theory of relief separate from the theories underlying the timely made claims (for ineffective assistance of counsel and concerning the adequacy of his guilty plea). Thus, any standalone claim for breach of the plea agreement would not "relate back" to the timely filed petition. *See, e.g.,*

At the outset it must be noted that "the government retains enormous discretion in deciding whether to make a § 5K1.1 motion." *United States v. Lichfield*, 499 Fed. App'x 827, 832 (10th Cir. Oct. 17, 2012) (citing *United States v. Altamirano–Quintero*, 511 F.3d 1087, 1090 (10th Cir. 2007) (A § 5K1.1 "motion is ordinarily left to the Government's discretion (unless the Government gives up that discretion as part of a plea agreement)[.]"); *United States v. Abston*, 401 Fed. App'x 357, 363 (10th Cir. Nov. 5, 2010) ("[T]he government has almost boundless discretion in deciding whether to move for . . . a [§ 5K1.1] departure[.]")). The plea agreement Mitchell signed made this abundantly clear to him. (*See, e.g.,* Doc. 16, ¶ 16(g) ("If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, ***a decision specifically reserved by the United States in the exercise of its sole discretion***, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 . . . or Rule 35 . . . , whichever the United States deems applicable . . . ." (emphasis added).) Further, during the plea colloquy, Judge Granade specifically inquired whether Mitchell understood his plea agreement.[22]

---

*Buchanan v. Lamarque*, 121 Fed. App'x 303, 315 (10th Cir. Jan. 19, 2005) ("While Buchanan's right to be present and conflict of interest claims are related factually to his other competency claims, they are based on entirely separate theories of relief, and we therefore conclude that they are 'new' claims for purposes of Rule 15(c)(2). As a result, 'the relation back provision of Rule 15(c) cannot be applied to save [Buchanan's right to be present and conflict of interest claims], and the district court did not abuse its discretion in denying . . . permission to amend.'" (quoting *United States v. Espinoza-Saenz*, 235 F.3d 501, 503-05 (10th Cir. 2000)) (initial citation omitted)).

[22]     *See* Doc. 30 at 5-6 (Mitchell indicated (1) that he had the opportunity to read and discuss the plea agreement with his attorney prior to signing it; (2) that the plea

Thus, the undersigned cannot say that Mitchell's trial counsel was constitutionally ineffective for failing to secure a downward departure. *See, e.g., Palacios v. United States*, No. 09–21160–CIV, 2012 WL 5387359, at *16 (S.D. Fla. Nov. 1, 2012) ("Where[ a] plea agreement contains no promise to file a substantial assistance motion, the government's failure to file such a motion is reviewed only for a constitutionally impermissible motivation, such as race, religion, or other arbitrary classification or the absence of a rational relation to a legitimate government purpose[, and where a defendant—similar to Mitchell here—makes no such allegations,] the government [does] not breach the plea agreement by failing to move for downward departure due to substantial assistance ***and*** [counsel cannot be] ineffective for failing to file a motion to compel the government to file a motion for downward departure." (internal citation and quotation marks omitted and emphasis added)).

Ultimately, as to the limitations concerning his third-party assistance agreement, it appears Mitchell is asserting that his trial counsel misrepresented how the process worked. (*See, e.g.,* Doc. 74 at 4 (Mitchell "expected the reduction[] and gave the information because [he] believed [h]e would receive that reduction[, in part,] because of what then counsel Colvin led [Mitchell] to believe.") Mitchell has not, however, alleged, much less "demonstrated[,] that but for his counsel's failure to advise him of the limitations of the third-party assistance motion, he

---

agreement represented all of the agreements he had with the United States Government concerning his case; (3) that he understood the terms of his plea agreement; and (4) that no one had made any other or different promises or assurances to him of any kind in an effort to induce him to plead guilty.)

would have insisted on going to trial." *Price v. United States*, 456 Fed. App'x 795, 799 (11th Cir. Jan. 26, 2012) (per curiam); *see Hill*, 474 U.S. at 59. This is fatal to Mitchell's fourth ground for habeas relief. *See, e.g., Davis v. United States*, 335 Fed. App'x 825, 827 (11th Cir. June 9, 2009) (per curiam) (A "movant [who] (1) fail[s] to allege in his motion to vacate that, but for counsel's advice, he would not have pled as he did or (2) otherwise fail[s] to show special circumstances indicating that counsel's advice affected his decision to plead, [lacks an] allegation of prejudice [ ]sufficient to satisfy *Strickland*." (citation omitted)).

Further, as in *Price*, "seeking a substantial-assistance motion [appears to the undersigned to have been Mitchell's] best option. Moreover, he understood when he pleaded guilty that the government retained complete discretion about whether to file a substantial-assistance motion and that there was no guarantee that his assistance, third-party or not, would qualify him for a downward departure." 456 Fed. App'x at 799.

### E.  Evidentiary Hearing.

This Court "'shall' hold an evidentiary hearing on a habeas petition '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Scott v. United States*, 325 Fed. App'x 822, 824 (11th Cir. Apr. 29, 2009) (per cuiam) (quoting 28 U.S.C. § 2255(b)).

> "[I]f the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.'" *Aron* [*v. United States*], 291 F.3d [708,] 714-15 (quoting *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989)). Yet the "district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively

contradicted by the record, or the claims are patently frivolous." *Id.* at 715. Thus, the petitioner needs to allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief. If the allegations are not affirmatively contradicted by the record and the claims are not patently frivolous," the requirement of an evidentiary hearing is triggered and the petitioner must offer proof at that hearing. *Id.* at 715 n.6.

*Id.*; *accord Lopez v. United States*, --- Fed. App'x ----, 2013 WL 3198614, at *1 (11th Cir. June 26, 2013) (per curiam) (in which the Eleventh Circuit recently vacated an order denying habeas relief—on the ground that counsel violated a defendant's constitutional right to testify—and remanded the case for an evidentiary hearing); *see also Williams v. United States*, Civil No. 08-00513-CG-N; Crim. No. 04-00197-CG, 2010 WL 1382762, at *5 (S.D. Ala. Mar. 3, 2010) (setting forth two additional grounds for not conducting an evidentiary hearing: (1) where the petitioner's version of the facts has already been accepted as true (citing *Turner v. Crosby*, 339 F.3d 1247, 1274-75 (11th Cir. 2003)); and (2) where the "the district court can determine the merits of the ineffectiveness claim based on the existing record" (quoting *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983))), *report and recommendation adopted*, 2010 WL 1382761 (S.D. Ala. Apr. 1, 2010).

There simply is no need for an evidentiary hearing. On the existing record, Mitchell has not presented non-conclusory facts that, if true, would entitle him to relief.

## F. Certificate of Appealability.

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 18 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate

of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may only issue where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

Mitchell is not entitled to a certificate of appealability on his ineffective-assistance-of-counsel claims (Grounds I, II, and IV (*see* Doc. 74)). Where, as is the case for Mitchell's ineffective-assistance-of-counsel claims here, a habeas petition is being denied entirely on the merits of an underlying constitutional claim, a COA should issue only when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also id.* at 483-84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983), includes a showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (quotation modified). With respect to Mitchell's ineffective-assistance-of-counsel claims, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2255 motion to vacate should be resolved in a different manner or that any of the

remaining issues presented is adequate to deserve encouragement to proceed further. Accordingly, Mitchell is not entitled to a certificate of appealability as to these claims.

Similarly, Mitchell is not entitled to a certificate of appealability as to his non-ineffective-assistance-of-counsel claim (Ground III) as it is procedurally barred. Where, as is the case here, a habeas petition is being denied on procedural grounds without reaching the merits of the underlying constitutional claims, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484; *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as unexcused procedurally defaulted claims are barred from a § 2255 proceeding, *see Lynn*, 365 F.3d at 1234, a reasonable jurist could not conclude either that this Court is in error in dismissing that claim in the instant petition or that Mitchell should be allowed to proceed further on those claims. *See Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be

allowed to proceed further.").

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation, the objecting party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011)[23]; *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

## III.  Conclusion

Because the Magistrate Judge is of the opinion that (1) Mitchell's three claims for ineffective-assistance-of-counsel (Grounds I, II, and IV (*see* Doc. 74)) fail because he has not shown that his rights were violated, and (2) the non-ineffective-assistance-of-counsel claim presented in the motion (Ground III) is procedurally unavailable, it is **RECOMMENDED** that the motion (Doc. 28) be **DENIED**. Accordingly, the undersigned **RECOMMENDS** that the motion for an evidentiary hearing (Doc. 35) be **DENIED**, and it is **FURTHER RECOMMENDED** that the Court find that Mitchell is not entitled to a certificate of appealability and is

---

[23]    It should be noted that in that proceeding, the Eleventh Circuit (Judge Hull) also denied the petitioner's motion for certificate of appealability on October 11, 2011. (*See* Doc. 14 in CA-11-0165-WS-C.)

therefore not entitled to appeal *in forma pauperis*.

As to Mitchell's other pending motions referred to the undersigned (Docs. 70 (motion to compel summary action), 71 ("motion to enlarge" the record), and 76 ("motion to request additional entries into the expanded record"), the motion for summary action is **DENIED as MOOT** and, only because the undersigned has explained the inapplicability of (1) the case law cited in the "motion to enlarge," and (2) the legal arguments made in the "motion to request additional entries into the expanded the record," it is **RECOMMENDED** that both motions be **GRANTED**.

## IV.  Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 23rd day of September, 2013.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**